UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Douglas Dynamics, LLC, d/b/a/ Western Products,<br><br>        Plaintiff,<br><br>   v.<br><br>B&P SUPPLY, INC.,<br><br>        Defendant | CIVIL ACTION<br>Docket No: 3:04-cv-11467-MAP |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

1.  Douglas Dynamics, LLC, d/b/a/ Western Products ("Western"), is a manufacturer of snow and ice removal equipment and accessories, such as snowplows and snowplow assemblies. (Declaration of Michael Schaut ("Schaut Decl.") ¶ 4, filed contemporaneously herewith.)

2.  Western is headquartered in Milwaukee, Wisconsin. (Schaut Decl. ¶ 1.)

3.  Western has been manufacturing and selling snow and ice removal equipment and accessories for over 50 years. (Schaut Decl. ¶ 4.)

4.  Western does not sell franchises. (Schaut Decl. ¶ 4.)

5.  Aside from the costs of the goods sold, Western does not charge its authorized outlets any franchise fee or other charges. (Schaut Decl. ¶ 5.)

6.  Western typically sells its products through selected outlets, which are authorized to purchase products from Western for retail sale to the general public. (Schaut Decl. ¶ 4.)

7.  B&P Supply, Inc. ("B&P") is a corporation that sells snow and ice removal equipment and accessories throughout Western New England and Eastern New York. (Counterclaim ¶ 4; Schaut Decl. ¶ 6.)

{W0360521.1}

8. In July 1982, Western orally agreed to allow B&P act as an authorized outlet for Western's products and to purchase products from Western for resale to consumers. (Schaut Decl. ¶ 6.)

9. Western and B&P never signed a written distributorship agreement. (Schaut Decl. ¶ 6.)

10. During the period from November 2003 through March 2004, Western sold and delivered to B&P, and B&P purchased and accepted from Western, snow and ice removal equipment and accessories. (Schaut Decl. ¶ 7; Answer ¶ 7.)

11. The sales price of the products that B&P purchased from Western totals $118,727.12. (Schaut Decl. ¶ 7, Ex. A.)

12. A true and accurate copy of B&P's statement of account as of June 30, 2005, is attached to the Declaration of Michael Schaut as Exhibit A. (Schaut Decl. ¶ 7.)

13. Every time that B&P purchased products from Western, it would receive an invoice for the purchases. (Schaut Decl. ¶ 9.)

14. True and accurate copies of the invoices for the purchases that B&P made during the period from November 2003 through March 2004 are attached to the Declaration of Michael Schaut as Exhibit B. (Schaut Decl. ¶ 9.)

15. The bottom of the invoices for the purchases that B&P made from Western clearly state:

> A LATE FEE OF 18% PER YEAR WILL BE CHARGED ON ALL PAST DUE ACCOUNTS TO THE EXTENT PERMITTED BY APPLICABLE LAW.
>
> SELLER REPRESENTS THAT ALL GOODS COVERED BY THIS INVOICE WERE PROCESSED IN COMPLIANCE WITH THE REQUIREMENTS OF SECTION 12(A) AND ALL APPLICABLE REQUIREMENTS OF THE FAIR LABOR STANDARDS ACT OF 1938 AS AMENDED.
>
> ALL SALES SUBJECT TO WESTERN PRODUCTS CREDIT POLICY, WARRANTY MANUAL, AND TERMS OF SALE PREVIOUSLY PROVIDED TO CUSTOMER.

(Schaut Decl. ¶ 10.)

16. Since at least as early as 2002, Western has provided B&P with copies of its Terms of Sale and Credit Policy on an annual basis. (Schaut Decl. ¶ 11.)

17. True and accurate copies of Western's Terms of Sale and Credit Policy are attached to the Declaration of Michael Schaut as Exhibit C. (Schaut Decl. ¶ 11.)

18. Section 3 of the Terms of Sale, entitled "Sole Terms and Conditions," notifies Western's authorized outlets, like B&P, that "your acceptance of any products and/or placement of any orders with Western Products indicates your assent to these terms of sale." (Schaut Decl., Ex. C.)

19. By purchasing and accepting products from Western, B&P agreed to be bound by the Terms of Sale. (Schaut Decl., Ex. C.)

20. Western reserves the right to sell to others and to decline to sell to an authorized outlet for any reason, in Western's sole discretion, at any time. (Schaut Decl. ¶ 12.)

21. For example, paragraph 2 of Western's Terms of Sale is entitled "Products" and it provides as follows:

> You may produce [*sic*] those products authorized by us from time to time, and we reserve the right to discontinue, withdraw or limit the sale of any and all products, and to change the design and specifications of the products.

(Schaut Decl. ¶ 12, Ex. C.)

22. In addition, paragraph 5 of Western's Terms of Sale is entitled "Nonexclusivity" and it provides as follows:

> Although Western Products uses care in selecting its authorized outlets, you agree that your approval as an authorized outlet in no way constitutes the grant of a franchise or other exclusive or special right to purchase or sell Western Products' products. There is no franchise fee or other charge to you, other than the costs of the goods sold to you. We reserve the right to sell to others and to decline to sell to you for any reason or no reason, in our sole discretion, at any time.

(Schaut Decl. ¶ 13, Ex. C.)

23. Western made repeated demands to B&P to make payment on its outstanding invoices. (Schaut Decl. ¶ 14.)

24. From March 2004 through April 2004, employees at Western called B&P six times and demanded that B&P pay its outstanding invoices. (Schaut Decl. ¶ 14.)

25. Karen Gutknecht called Peter Dus at B&P on March 2, 2004, and demanded that B&P pay its outstanding invoices. (Schaut Decl. ¶ 14.)

26. Robert Hannum called Peter Dus at B&P on March 8, 2004, and demanded that B&P pay its outstanding invoices. (Schaut Decl. ¶ 14.)

27. Robert Young called Peter Dus at B&P on March 18, 2004, demanded that B&P pay its outstanding invoices. (Schaut Decl. ¶ 14.)

28. Dan Bousman and Robert Young called Peter Dus at B&P on March 22, 2004, demanded that B&P pay its outstanding invoices. (Schaut Decl. ¶ 14.)

29. Karen Gutknecht and Robert Young called Peter Dus at B&P on March 24, 2004, demanded that B&P pay its outstanding invoices. (Schaut Decl. ¶ 14.)

30. Robert Hannum called Peter Dus at B&P on April 5, 2004, demanded that B&P pay its outstanding invoices. (Schaut Decl. ¶ 14.)

31. On April 13, 2004, Robert Young at Western sent a letter to Peter Dus at B&P and demanded that B&P pay its outstanding invoices. (Schaut Decl. ¶ 15, Ex. D.)

32. A true and accurate copy of the April 13, 2004 letter from Robert Young to Peter Dus is attached to the Declaration of Michael Schaut as Exhibit D. (Schaut Decl. ¶ 15.)

33. In the April 13, 2004 letter, Western offered to allow B&P to take a 1% cash discount on B&P's past due invoices and waive the late fees that had accumulated, if B&P paid off the balance of its account within 10 days of receipt of the letter. (Schaut Decl. ¶ 15, Ex. D.).)

34. B&P did not accept Western's offer and did not pay off its account. (Schaut Decl. ¶ 15.)

35. Despite Western's repeated demands to B&P to make payment on the outstanding invoices, B&P failed and refused to make any such payment to Western. (Schaut Decl. ¶ 16.)

36. Western continued to sell products to B&P through March 2004, even though some of the invoices for the products B&P had purchased from Western remained unpaid for more than three months. (Schaut Decl. ¶ 7.)

37. According to Western's records, B&P did not attempt to purchase any additional products from Western after April 9, 2004, and Western never refused to fill any order placed by B&P. (Schaut Decl. ¶ 15.)

38. The Terms of Sale and Credit Policy governing the purchases made by B&P required payment in full within 30 days of the invoice date, and provided for a 1.5% service charge per month on amounts overdue and unpaid. (Schaut Decl., Ex. C.)

39. In accordance with Western's Credit Policy, Western has assessed late fees on B&P's account from March 2004 through July 2005 at the rate of 1.5% per month. (Schaut Decl. ¶ 8, Ex. C.)

40. The total amount of interest that has accumulated on B&P's account as of July 15, 2005 is approximately $29,171.10. (Schaut Decl. ¶ 8.)

Dated: July 15, 2005				/s/ Christopher R. Drury

Christopher R. Drury, Mass. Bar No. 181400
cdrury@pierceatwood.com

Jeffrey M. White, Maine Bar No. 1287
jwhite@pierceatwood.com

PIERCE ATWOOD
One Monument Square
Portland, ME  04101
207-791-1100

*Attorneys for Plaintiff Douglas Dynamics, LLC d/b/a/ Western Products*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2005, I electronically filed **PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system.  I also served a copy of the same, via First-Class Mail, postage prepaid, upon the following:

>Jack E. Houghton, Jr.
>78 Bartlett Avenue
>Pittsfield, MA 01201
>(413) 447-7385

DATED:  July 15, 2005

>/s/  Christopher R. Drury
>Christopher R. Drury
>cdrury@piercatwood.com
>
>PIERCE ATWOOD LLP
>One Monument Square
>Portland, ME   04101
>(207) 791-1100
>
>*Attorney for Plaintiff Douglas Dynamics, LLC d/b/a/ Western Products*