UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Douglas Dynamics, LLC, d/b/a/ Western Products,<br><br>      Plaintiff,<br><br>v.<br><br>B&P SUPPLY, INC.,<br><br>      Defendant | CIVIL ACTION<br>Docket No: 3:04-cv-11467-MAP |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Douglas Dynamics, LLC d/b/a/ Western Products ("Western") respectfully submits this reply in support of its motion for summary judgment.

**Argument**

A.  **B&P Breached Its Sales Contracts With Western By Failing To Pay For The Products It Purchased.**

B&P Supply, Inc. ("B&P") has admitted that it failed to pay Western for the snow and ice removal equipment and accessories it purchased during the period from November 2003 through March 2004. According to Western's records, the price of the goods that B&P purchased totals approximately $118,727.12 and B&P did not submit any admissible evidence that contradicts that amount. Pursuant to Section 2-709 of the Uniform Commercial Code, Western is therefore entitled to recover $118,727.12 from B&P as the price of the goods that B&P purchased and accepted.[1]  *See* MASS. GEN. LAWS ch. 106 § 2-709.

---

[1] Western is also entitled to recover the interest that has accumulated on B&P's overdue account, which totaled $29,171.10 as of July 15, 2005. The bottom of every invoice for the purchases made by B&P states, in all capital letters, "A LATE FEE OF 18% PER YEAR WILL BE CHARGED ON ALL PAST DUE ACCOUNTS TO THE EXTENT PERMITTED BY APPLICABLE LAW." (Western's Statement of Material Facts ("SMF") ¶¶ 14, 15.) Western gave B&P clear notice that it would charge interest on B&P's account if B&P allowed its account to become past due, and B&P's argument that it does not have to pay interest because it allegedly did not agree to be bound by Western's Terms of Sale is without merit.

{W0385037.1}

B&P contends it was somehow legally justified in not paying for its purchases because Western allegedly refused to supply B&P with snow and ice removal equipment. (B&P's Opp'n at 3.) Notwithstanding that B&P admitted receiving products from Western from November 2003 through March 2004 – which plainly demonstrates that Western did not refuse to supply B&P with snow and ice removal equipment – B&P's contractual obligation to pay for the goods it purchased became binding once B&P accepted delivery of those goods. *See* MASS. GEN. LAWS ch. 106 § 2-709. Contrary to B&P's assertions, the fact that B&P raised a counterclaim against Western based on alleged unfair trade practices does not relieve B&P of its legal obligation to pay for the goods it purchased. The simple fact is that: (1) Western sold products to B&P totaling $118,727.12; (2) B&P accepted delivery of the products from Western; and (3) B&P subsequently refused to pay for its purchases. Western made numerous demands to B&P to settle its account, and even offered to waive the interest that had accumulated if B&P would simply arrange to pay off its outstanding invoices, yet B&P refused to make any payments to Western. B&P's contractual obligation to pay for the goods it purchased is clear and Western is entitled to summary judgment on its claims against B&P as a matter of law.

**B.   Western Is Entitled To A Summary Judgment On B&P Counterclaim Because B&P Failed To Submit Any Admissible Evidence In Support Of Its Claims.**

Summary judgment is useful "to isolate and dispose of factually unsupported claims," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), particularly in antitrust cases. *See Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95 (2d Cir. 1998). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the moving party, Western showed that there is a complete lack of evidence sufficient to support B&P's

claims. The burden then shifted to B&P to "set forth *specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added); *see also Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir. 1993) (nonmovant must present definite, competent evidence to rebut a motion for summary judgment and cannot rely upon evidence that is "merely colorable" or "not significantly probative"). B&P failed to meet its burden.

As an initial point, B&P did not comply with the requirements of Local Rule 56.1 in its opposing statement of material facts. Under Local Rule 56.1, an opposing statement of facts must contain a concise statement of the material facts of record as to which the non-moving party contends there exist genuine issues, <u>along with page references to affidavits, depositions and other documentation</u>. *Id*. Failure to comply with the requirements of Local Rule 56.1 is grounds for the Court to deem the moving party's statement of facts admitted. *See G.E. Capital Healthcare Fin. Serv. v. Fall River Walk-In, P.C.* 2004 U.S. Dist. LEXIS 75, *2-3 (D. Mass. 2004) (plaintiff's statement of material facts deemed to be admitted where defendant failed to comply with the requirements of Local Rule 56.1); D. Mass. R. 56.1. In its opposing statement of facts, B&P purports to deny many of Western's statement of facts without <u>any</u> page references to affidavits, depositions or other evidence in the record. Indeed, not a single paragraph that B&P "denied" contains any citations to any record support whatsoever. B&P also responded to many of Western's statement of facts by stating:

> B&P is without information sufficient to form a belief as to the truth or veracity of the allegations contained in Paragraph [] of the Plaintiff's Statement of Undisputed Material Facts.

Those statements do not include any citations to affidavits, depositions, or other evidence in the record and do not comply with the requirements of Local 56.1. Accordingly, the Court should

deem every paragraph of Western's statement of undisputed material facts admitted for the purpose of ruling on Western's motion for summary judgment.

1.  <u>Western did not terminate its relationship or refuse to deal with B&P.</u>

B&P persists in arguing, with no admissible evidence or factual support, that Western suddenly terminated its relationship with B&P, without any notice or warning.  On the contrary, it is undisputed that Western never refused to sell products to B&P or refused to honor any purchase order placed by B&P.  As discussed in Western's motion for summary judgment, after B&P had allowed its account to remain unpaid for more than 90 days, Western made repeated demands to B&P to pay its outstanding invoices and settle its account.  (SMF ¶ 23.)  In March and April 2004, employees at Western called B&P six times and demanded that B&P make payments on its outstanding invoices.  (SMF ¶¶ 25-30.)  Western also sent B&P a letter in April 2004 and demanded that B&P pay its outstanding invoices.  (SMF ¶ 31.)  After B&P received the April 2004 letter, it did not place any additional orders with Western.  (SMF ¶ 37.)  B&P terminated its relationship with Western by failing to settle its account, and any damage that B&P allegedly suffered was brought about by B&P's refusal to pay Western for the products it had purchased.

Assuming *arguendo* that Western had terminated its relationship with B&P, a fact that Western denies, the undisputed facts show that by its actions, Western provided more than adequate notice of such termination to B&P.  B&P acknowledged that the relationship between Western and B&P was based on an oral agreement for the sale of goods, which was terminable at will by either party upon giving reasonable notice.  (B&P's Opp'n at 4); *see also Teitelbaum v. Hallmark Cards Inc.*, 520 N.E.2d 1333, 1336 (Mass. Ct. App. 1998); *Ben Elfman & Son, Inc. v. Criterion Mills, Inc.*, 774 F. Supp. 683, 687 (D. Mass. 1991).  The fact that B&P's account was

more than 90 days overdue, and the fact that Western telephone B&P six times and demanded that B&P pay off its account, indicates that even if Western had terminated its relationship with B&P, it only did so after providing B&P with reasonable notice. Moreover, B&P's steadfast refusal to pay for the goods it purchased would have provided Western with "just cause" had it chosen to terminate B&P as an authorized resale outlet. *See PPM Chemical Corp. of P.R. v. Saskatoon Chemical Ltd.,* 931 F.2d 138, 139-40 (1st Cir. 1991) (concluding that paying for goods on time is one of the "essential" terms of a sales contract and failure to pay constitutes "just cause" for terminating a relationship between a dealer and its distributor). There is simply no basis for B&P's conclusory, unfounded assertion that Western terminated its relationship with B&P "suddenly, without any previous notice or warning."

B&P also claims to have been harmed "for lack of supplier." Without citation to any authority, B&P asserts that "cases have held that if the defendant is unable to obtain another supplier without causing significant financial injury, then the Plaintiff has not furnished reasonable notice and will be responsible for damages." (B&P's Opp'n at 5.) Yet, B&P failed to introduce any admissible evidence that shows that B&P attempted and failed to obtain products from another supplier. In his affidavit, B&P's president, Peter Dus, stated that "B&P had no other supplier of genuine Western parts and components" and that Western allegedly "knew of B&P's dependency and need for genuine Western parts and components." By that statement, B&P suggests that Western somehow had an obligation to continue to sell products to B&P even though B&P's account remain unpaid for more than 90 days. That argument is clearly irrational and illogical. It is black letter law that a manufacturer "generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984). Thus, in the absence of a written distributorship

{W0385037.1}                                    5

agreement with Western, B&P was not entitled to purchase products from Western for resale to consumers. There are absolutely no facts in the record that show that Western was the only supplier of snow and ice removal equipment in the Western New England – Eastern New York region. B&P could have obtained snow and ice removal equipment from a supplier other than Western, and any harm that B&P allegedly suffered because of its refusal to settle its account with Western is due to B&P's failure to mitigate its damages.

2. B&P failed to submit any admissible evidence in support of its claims of antitrust violations and unfair competition.

B&P asserts that Western is not entitled to a summary judgment on B&P's counterclaim simply because B&P alleged that Western's refusal to deal with it constituted a restraint of trade in violation of the Sherman Act and the Massachusetts Antitrust Statute. B&P refers to the allegations of the Counterclaim and argues that "B&P has, at a minimum, alleged facts that satisfies the initial burden that Western's behavior had an actual adverse effect on competition as a whole in the relevant market." (B&P's Opp'n at 6.) Aside from the fact that the Counterclaim does not define a relevant market, or contain a single allegation that Western's conduct had a negative impact on competition as a whole, B&P's argument misses the point. At the summary judgment stage, the nonmoving party that has the burden of proof on a particular issue at trial must do more than merely rely on unsupported, conclusory assertions. It must submit specific, admissible evidence to support its claims. *See Pagano*, 983 F.2d at 347.

In its motion for summary judgment, Western pointed to the complete lack of any admissible evidence to substantiate B&P's claims. For example, in order to avoid summary judgment on its Section 1 claim, B&P had the burden of making at least a prima facie showing of concerted action among two or more independent actors. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763 (1984); *Garment Dist., Inc. v. Belk Stores Servs., Inc.*, 799 F.2d 905,

911 (4th Cir. 1986). Yet, B&P failed to submit any evidence whatsoever that Western contracted, combined, or conspired with any other entity to restrain trade in violation of Section 1 of the Sherman Act. With respect to B&P's Section 2 claims, B&P did not submit any admissible evidence that Western has monopoly power in a relevant market or that Western had the specific intent to monopolize a relevant market. B&P's Section 2 claims therefore fail as a matter of law.[2] *See Coastal Fuels of Puerto Rico, Inc., v. Caribbean Petroleum Corp.*, 79 F.3d 182, 195-96 (1st Cir.), *cert. denied*, 519 U.S. 927 (1996); *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 459 (1993); *United States v. Yellow Cab Co.*, 332 U.S. 218, 225 (1947). Because B&P merely relied on the unsupported, conclusory allegations of the Counterclaim, and failed to submit any admissible evidence in support of its claims, the Court should grant Western's motion for summary judgment with respect to B&P's counterclaim.

## Conclusion

For the reasons stated above, and in Western's memorandum in support of its motion for summary judgment, this Court should enter an order granting summary judgment in favor of Western on its Complaint against B&P and on B&P's Counterclaim against Western.

---

[2] Because Western did not unlawfully terminate its relationship with B&P or refuse to deal with B&P, and because B&P cannot prevail on its claims under the Sherman Act or the Massachusetts Antitrust Act, B&P's Chapter 93A claim also fails as a matter of law.

| | |
|---|---|
| Dated: August 18, 2005 | /s/ Christopher R. Drury<br>Christopher R. Drury, Mass. Bar No. 181400<br>cdrury@pierceatwood.com<br><br>Jeffrey M. White, Maine Bar No. 1287<br>jwhite@pierceatwood.com<br><br>PIERCE ATWOOD<br>One Monument Square<br>Portland, ME  04101<br>207-791-1100<br><br>*Attorneys for Plaintiff Douglas Dynamics, LLC d/b/a/ Western Products* |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2005, I electronically filed **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will serve notice to the following

>Jack E. Houghton, Jr.
>78 Bartlett Avenue
>Pittsfield, MA 01201
>(413) 447-7385
>jhoughtonjr@aol.com

DATED:  August 18, 2005

>/s/  Christopher R. Drury
>Christopher R. Drury
>cdrury@piercatwood.com
>
>PIERCE ATWOOD LLP
>One Monument Square
>Portland, ME  04101
>(207) 791-1100
>
>*Attorney for Plaintiff Douglas Dynamics, LLC d/b/a/ Western Products*