UNITED STATED DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
DOCKET NO:
04-CV-11467 MAP

DOUGLAS DYNAMICS, LLC, d/b/a/ WESTERN PRODUCTS,
          Plaintiff,

v.

B & P SUPPLY, INC.,
          Defendant

OPPOSITION TO PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

NOW comes the Defendant B & P Supply, Inc. ("B & P"), and submits the following as OPPOSITION to the Request For Attorney's Fees, and Supplemental Memorandum Concerning Interest and Attorney's Fees, filed by the Plaintiff, Douglas Dynamics, LLC d/b/a Western Products ("Western").

In support thereof, the Defendant states as follows:

A.    <u>Overview.</u>

The District Court granted judgment in favor of Western in the amount of one hundred eighteen thousand seven hundred twenty-seven dollars and twelve cents ($118,727.12). Western's Complaint, filed June 28, 2004, in Paragraph 9, alleged that the terms of sale between the parties provided for a service charge of 1.5% per month on any months overdue and unpaid. B & P, in its Amended Answer and Counterclaim, dated February 12, 2005, indicated that it was without information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 9 of the Complaint. Notwithstanding this Response, the Defendant acknowledges that Western's invoices provide language concerning a late fee of 18% per year on past due

1

accounts. Absent this, there was no specific agreement between the parties as to the imposition of interest for unpaid accounts. Western's invoices do not contain a provision involving the award of attorney's fees to Western in the event of the necessity for a collection. The Affidavit of Peter A. Dus, dated August of 2005 indicates, at the very end, that Western did not supply him with a "terms of sale" document, which was attached to Western's Affidavit until January of 2004, <u>until after</u> Western had stopped the majority of its deliveries to him. A copy of that Affidavit is attached hereto and marked Exhibit "A". Plaintiff's Memorandum points out that B & P did not deny having received a copy of the credit policy; however, it failed to point out that B & P only received the Terms of Sale document from Western after substantially all of Western's product, which gave rise to liability in Plaintiff's Complaint, was delivered. Accordingly, there was no manifestation of consent or agreement by B & P for Western's products sales to B & P for which B & P failed to pay. Attorney's fees traditionally have not been considered "costs" that may be recovered unless authorized as costs by some statute or rule. See *Waldman v. American Honda Motor Company, 413 Mass, 320 (1992)*. Unless there was a contractual provision that specifically provided for the payment of attorney's fees, or specific statutory authorization, then the parties must pay their own counsel fees. See *Lincoln Street Realty Company v. Green, 374 Mass, 630 (1978)*. For these reasons, Western's request for attorney's fees should be denied altogether.

A. <u>The Amount of Western's Attorney's Fees.</u>

Western has argued that it should be entitled to a "load star" award for fees. Under the load star method, only the hours that were reasonably expended in litigation of a claim may be included in a request for attorney's fees. See *Stokes v. Saga International Holiday's Ltd., 376F. Supp.2d 86 (Mass. (2005)*. The burden is on the fee applicant to produce satisfactory evidence, in addition to the attorney's own affidavit, that the

requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Id.* B & P does not question the hourly rate submitted by Attorney Christopher R. Drury; however, the hourly rate of $ 275 an hour for Attorney Jeffrey M. White is unsubstantiated and, for that reason, should not be allowed for that reason.

B.  <u>Conclusion.</u>

For the reasons mentioned above, the Defendant B & P respectfully requests this Honorable Court to DENY the Plaintiff's request for attorney's fees.

B & P Supply, Inc.
By Its Attorney,

Dated: November 16, 2005

_____
Jack E. Houghton, Jr.
78 Bartlett Avenue
Pittsfield, MA 01201
(413) 447-7385
B.B.O. # 241040

3

## CERTIFICATE OF SERVICE

I, Jack E. Houghton, Jr. hereby certify that on this 16th day of November, 2005, I have served the above Opposition To Plaintiff's Request For Attorney's Fees by mailing same to Jeffrey M. White, Esq., Pierce Atwood LLP, One Monument Square, Portland, ME 04101, by first class mail, postage prepaid.

                                                                                    _____
                                                                                    Jack E. Houghton, Jr.



UNITED STATED DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
DOCKET NO:
04-CV-11467 MAP

DOUGLAS DYNAMICS, LLC, d/b/a/ WESTERN PRODUCTS, ]
]
Plaintiff, ]
]
] AFFIDAVIT OF
v. ] PETER A. DUS
]
B & P SUPPLY, INC., ]
]
Defendant ]

I, Peter A. Dus, on oath depose and say that I am the president and treasurer of the Defendant B & P Supply, Inc. ("B & P"). B & P has a principal place of business located in Pittsfield, Massachusetts. For the past thirty (30) years B & P was involved with the sale and repair of snow and ice removal equipment in the Western Massachusetts Connecticut, and Eastern New York region. For approximately the last twenty-five (25) years, B & P had a business relationship with Douglas Dynamics, LLC d/b/a Western Products ("Western"). B & P has always been referred to by Western as one of its distributors. See Exhibits "A" and "B" attached. Western supplied B & P with snow and ice removal equipment and accessories, such as snow plows and snow plow assemblies, in a periodic but consistent manner for almost twenty-five (25) years. B & P came to rely on Western's supply and delivery of snow and ice removal equipment and accessories on a timely basis. Western was B & P's sole provider of genuine Western snow and ice removal parts and components. Western, during 2003 and 2004, was the sole manufacturer of genuine Western snow and ice removal products in the New England – Eastern New York region, the same area B & P did business. Western, during that time, sought to take sole control and dominate the snow and ice removal product industry in New England and Eastern New York State. During this same period, B & P had no other supplier of genuine Western parts and components. Western knew of B & P's dependency and need for genuine Western parts and components. For over 25 years, B & P paid Western its invoices in a timely and complete manner. In fact, B & P never missed a discount date that Western provided for timely payments of its invoices. Up until 2003, B & P was both healthy and profitable, and dependant on Western for supply of its snow and ice removal equipment and components. I believe that, at some point, Western made the conscious decision to favor and supply a regional competitor, and stop supplying me with its product. I believe this, along with other acts, had the effect of stifling competition in the snow and ice removal equipment industry. This refusal by Western took place in the fall of 2003. During that time, I had given Western significant orders for the up-coming 2003-2004 winter season. There was a window of time in the snow removal sales which, if not taken advantage of, would evaporate in short order. If snow and ice removal equipment and components are not available during that window of

time, then the season is lost, which happened to B & P because of Western's refusal to deal with it. In fact, I placed the largest pre-season order that I had ever had with Western in May of 2003. Notwithstanding this, Western, suddenly and without any warning or notice, failed to deliver its inventory to me in the fall of 2003. I discovered later that other distributors had been receiving shipments of inventory from Western when it should have been shipping to B & P. At the same time, I learned from a letter from Western that its parent company was selling Western to raise cash. A copy of the letter is attached and marked "A". I later learned that Western had actually been sold to Aurora Capital Group, a national lending company. A copy of that letter is attached and marked "B". Eventually, I found out that Western offered a distributorship/right to sell to a competitor in Pittsfield, which was in my former territory, which had a direct and severe financial impact upon my business. As a result of Western's refusal to deal with me, B & P lost a significant market share, goodwill and customer loyalty. Many B & P customers thought that I had neglected to order their plow parts or that there was something else wrong with my business. In light of this, I asked Western for some reasonable concession for what they claimed B & P owed; however, they refused to do so, except for an extremely modest amount that did not come close to compensating me for the loss of my snowplow business. Western did not supply me with the "Terms of Sales" document attached to Western's affidavit until January of 2004, after it had stopped its deliveries to me.

Signed under the pains and penalties of perjury this ___ day of August, 2005.

_____
Peter A. Dus